IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01735-WDM-MEH

TARICO DEVONTAE ROCKETTE, SR.,

 Applicant,

v.

LARRY REID, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

 Respondents.

_____

## RECOMMENDATION FOR DISMISSAL
_____

 Applicant has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Docket #2).  Respondents have filed their Answer (Docket #16), together with certain documents from the state appellate proceedings appended as exhibits.  Applicant has not submitted a traverse in this regard.  Supplemental briefing was received based upon a letter sent to the Court by one of the Applicant's co-defendants which asserted that the Applicant is innocent of all charges.   Under the provisions of 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, this matter has been referred to me for Recommendation on dispositive matters and for ruling on nondispositive matters.  Based on the record contained herein, I **recommend** that the Application be denied and that this matter be dismissed, with prejudice.

 The parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or

recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## FACTS

Applicant is a state prisoner in Colorado, and he has filed a *pro se* Application challenging his 2000 state court conviction in the Denver County District Court on two counts of aggravated robbery.  The record indicates that two men, Jack DeBoer and Richie Tafoya, were robbed at gunpoint by three other men who approached them when they pulled into a car wash late at night to fix a problem with their car.  Applicant was later identified as one of the robbers by Mr. DeBoer.  The other two robbers were identified as Frank Ortiz and Akinyele Chatman.  The Applicant was sentenced to two consecutive 10-year terms with the Colorado Department of Corrections ("CDOC"), based upon his conviction.  He filed a direct appeal, but his conviction was affirmed.  The Applicant also filed a motion for postconviction relief under Colo. R. Crim. P 35(c).  The trial court denied the postconviction motion, and the denial was upheld on appeal to the Colorado Court of Appeals.  The Colorado Supreme Court denied certiorari.

2

Applicant has now filed his federal habeas Application in this Court.  In his Application, the Applicant designates 16 claims alleging he is in custody in violation of the Constitution of the United States, which the Respondents have identified and Applicant has not disputed[1] are as follows:

1.  He was subjected to an unlawful search without a warrant.

2.  He was subjected to an unlawful one-on-one show-up identification procedure following his arrest.

3.  The victims gave inconsistent statements concerning when they first identified the Applicant.

4.  The photo lineup procedure was impermissibly suggestive.

5.  The victims gave inconsistent and conflicting statements to the police.

6.  Trial counsel failed to suppress statements by co-defendant Chatman and failed to challenge Chatman's credibility at trial.

7.  There was a lack of physical evidence linking Applicant to this robbery.

8.  The trial court erred in denying his motion for substitute counsel.

9.  The prosecution violated Colo. R. Crim. P. 16 by failing to provide discovery, and defense counsel failed to obtain complete discovery materials.

10.  Neither the prosecutor nor trial counsel advised him that his co-defendant had made a videotaped statement implicating him in the robbery.

11.  The trial court erred in denying Applicant's challenge for cause to Juror Biderman.

12.  The trial court erred in denying Applicant's *Batson* challenge to the excusal of Juror Perkins.

13.  Trial counsel failed to challenge for cause a potential juror who had been the victim of prior robberies.

---

[1]Pursuant to 28 U.S.C. § 2248, because the Applicant did not challenge the characterization of his claims in his traverse, and based upon the material set forth in the Application, the characterization by the Respondents is accepted as correct.

3

14.     Trial counsel failed to call Leanna Ashford or Frank Ortiz as defense witnesses.

15.     The trial court erred in denying Applicant's motion for judgment of acquittal on the robbery count relating to victim Tafoya.

16.     Applicant was deprived of his right to testify at trial because trial counsel did not move to suppress his prior convictions.

In their Answer, the Respondents concede that the Application has been timely filed, but argue that only Claims 4, 8, and 11 have been properly exhausted in state court proceedings so that they may be considered in these proceedings.  Respondents contend that Claims 12, allegations of trial counsel's failure to call Leanna Ashford as a defense witness raised in Claim 14, and Claim 16 were presented on appeal to the Colorado Court of Appeals, but not presented to the Colorado Supreme Court.  Further, the Respondents argue that Applicant's claim that trial counsel failed to call Frank Ortiz as a defense witness in Claim 14 was not raised until Applicant filed his petition for writ of certiorari in his postconviction appeal.  Because these claims did not proceed through one complete round of Colorado's established appellate review process, Respondents argue that they have not been exhausted. As for the remainder of Applicant's claims, Claims 1, 2, 3, 5, 6, 7, 9, 10, 13, and 15, Respondents indicate that none were raised on appeal either to the Colorado Court of Appeals or to the Colorado Supreme Court.  With regard to the unexhausted claims, the Respondents assert that they are procedurally barred from consideration by this Court. As far as the three exhausted claims are concerned, the Respondents generally deny the Applicant's allegations.  They also argue, however, that the claims lack merit, and that the Application should, therefore, be dismissed.

On June 23, 2006, the Chambers of United States Magistrate Judge Michael E. Hegarty received an unsigned, typed letter purporting to be from Frank Ortiz, 929 Arcturus Dr., #4-C,

4

Colorado Springs, CO, which indicates that Mr. Ortiz would "like the courts to know that Mr. Rockette is innocent of all charges." *See* ORDER REQUESTING SUPPLEMENTAL BRIEFING, Docket #22, Exh. A. The letter indicates that Mr. Ortiz "wanted to testify on [Mr. Rockette's] behalf at his trial, but Mr. Rockette's lawyer never did contact me or my attorney." Based upon the receipt of the letter, the Court ordered that supplemental briefing be submitted in connection with the issue of whether the Applicant could utilize the letter to overcome the procedural bar to federal habeas review of certain of his claims. Applicant and Respondents have both filed their supplements on this issue.

Applicant proceeds in this action *pro se*. As a *pro se* litigant, Applicant's filings are entitled to liberal construction by this Court. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

## DISCUSSION

### I.      Procedural Bar.

The Respondents argue that except for Claims 4, 8, and 11 of the Application, the remainder of Applicant's claims were not exhausted in the state courts and are now procedurally barred from review by the state courts. Respondents base their argument on the fact that while the Applicant may have arguably presented the claims he presents in this Court to the trial court, he did not raise them on appeal to the Colorado Court of Appeals and he did not present all of his claims in a discretionary petition for review in the Colorado Supreme Court. Applicant does not directly counter the Respondents' position, but information contained within his Response to Order to Show Cause filed on October 5, 2005, indicates that while some claims the Respondents argue have been procedurally defaulted may have been raised to the trial court, they were not all carried through on appeal to the

5

Colorado Court of Appeals or to the Colorado Supreme Court. *See* RESPONSE TO ORDER TO SHOW CAUSE, Docket 7.

Exhaustion of available and adequate state court remedies is a prerequisite to a habeas corpus applications in federal court. *Granberry v. Greer*, 481 U.S. 129 (1987); *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b).

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 120 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim to each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).

"Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005). "The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id*. A state prisoner "does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief (or similar document) to find material that will alert it to the presence of such a claim." *Baldwin*, 541 U.S. at 32.

If a habeas applicant has failed to raise a claim properly in the state courts, and no state judicial remedies are available to adjudicate the claim at the time the federal habeas application is filed, the applicant meets the technical requirements for exhaustion, because no state remedies are available. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Commonly known as the

doctrine of procedural default, this tenet prevents applicants from evading the purpose of the exhaustion requirement by defaulting their state remedies and then seeking federal habeas relief. The procedural default doctrine ensures that a criminal defendant must give the state courts a full and fair opportunity to address and resolve the defendant's constitutional claims before resorting to federal court.

In *Coleman*, the United States Supreme Court said:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice.

*Id*. at 750. In some circumstances, a finding of procedural default requires that the federal court have before it an opinion from the state court which clearly states that its decision to deny relief to the applicant was based on a separate, adequate, and independent state procedural rule. However, procedural default also may be found when the applicant has failed to exhaust state court remedies and "the court to which [applicant] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735, n. 1.

Colorado's procedural rules now bar the Applicant from again appealing claims he has previously raised, and from raising new claims related to the criminal conviction at issue here. First, the Applicant pursued a direct appeal of his convictions through the Colorado Court of Appeals, and his Petition for Certiorari was denied by the Colorado Supreme Court. He may not file a second direct appeal of his conviction. Second, Colorado's successive petition rule prevents the Applicant from raising new issues in a second Rule 35(c) motion or from attempting to raise claims that could have previously been presented in an appeal. *See generally People v. Hubbard*, 519 P.2d 945, 948-

7

49 (1974) (successive application rule). Further, the period of limitations for a Rule 35(c) motion has expired. COLO. REV. STAT. § 16-5-402(1) (3-year period of limitations for Rule 35(c) motions). The Applicant does not have any real prospect of obtaining relief in the Colorado state courts based on the claims other than Claims 4, 8, and 11 that he asserts in his Application in this case. Therefore, the majority of his claims are technically exhausted, but procedurally barred from review in these federal habeas proceedings. *Coleman*, 501 U.S. at 729-30.

The Applicant can, however, overcome procedural default if he can demonstrate either (1) cause for and prejudice from the default, or (2) that not reaching his claims would result in a fundamental miscarriage of justice. *Id.* at 749. In this case, the Applicant can demonstrate neither exception.

By not including all of the direct appeal and postconviction claims that he argued in the trial court and/or the Colorado Court of Appeals and/or the Colorado Supreme Court through all levels of the state process, the Applicant effectively abandoned those claims. With regard to claims raised in his direct appeal which were not presented on appeal, ineffective assistance of counsel can, in some circumstances, constitute cause for procedural default. However, it must be presented to the state courts as an independent claim before it may be used to establish cause. *See Murray v. Carrier*, 477 U.S. 478, 489 (1986); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). While the Applicant took issue with actions or inactions of counsel on direct appeal in his postconviction proceedings, he failed to articulate a claim in this regard. *See* EXHIBITS: STATE COURT RECORD TO ANSWER TO APPLICATION FOR WRIT OF HABEAS CORPUS ("STATE COURT RECORD"), Docket #17, Exh. H. Additionally, Applicant cannot show cause based on an argument that postconviction appellate counsel either failed to present all claims or ignored his requests to present the claims.

8

There is no constitutional right to counsel in collateral proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Therefore, a failure of postconviction counsel resulting in procedural default "cannot constitute cause to excuse default in federal habeas." *Coleman*, 501 U.S. at 757. Further, the record does not demonstrate that a miscarriage of justice may result if this Court does not hear this claim. To make such a showing, Applicant must demonstrate that a constitutional error has probably resulted in the conviction of one who is actually innocent. *See Bousley v. United States*, 523 U.S. 614, 623 (1998).

> To be credible, such a claim requires [an applicant] to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Schlup*, 513 U.S. at 324. The Supreme Court has counseled, however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

The miscarriage of justice standard that an applicant must meet differs depending on the challenge brought by the applicant. If the applicant claims actual innocence of the underlying crime, he must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* at 327. More specifically, the applicant must demonstrate "that it is more likely than not that no reasonable juror would have found the applicant guilty beyond a reasonable doubt." *Id.* In this case, co-defendant Frank Ortiz has submitted a letter which asserts that the Applicant is innocent of all charges and did not have any involvement in the case. This Court need not "test the new evidence by a standard appropriate for deciding a motion for summary judgment," but, rather, may "consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* at 331-332. As noted by the Respondents:

9

> Even if the letter is considered by this Court, it does not establish the [Applicant's] "actual innocence" which would allow him to have his defaulted claims considered. The evidence at trial was substantial; the [Applicant] was positively identified by one of the robbery victims.  The letter is written by a co-defendant who received a suspended sentence in 2000 and is apparently no longer in any sort of custody.  The letter was also written years after the trial, appeal, and postconviction proceedings, and after the co-defendant faces no additional penalties for his involvement in this case.

RESPONDENTS' SUPPLEMENTAL BRIEFING, Docket #28, p. 7.

The record includes a letter written by Mr. Ortiz to the Colorado Court of Appeals in March, 2004, which appears to have been mailed directly from Mr. Ortiz to the appellate court and not submitted as part of the appellate record.  *See* ATTACHMENTS TO APPLICATION, Docket #2-2, p. 15. The letter written by Mr. Ortiz at that time differs from his current letter to this Court.  While Mr. Ortiz admits his responsibility for the crime, as he does to this Court, he acknowledges that the Applicant "fits some of the description of a suspect involved," and simply denies ever making a statement that the Applicant was involved in the crime.  *Id*.  There is no representation as to Applicant's innocence, and it does not appear to be offered to prove the truth of Applicant's innocence.  This letter by Mr. Ortiz would directly support the victim identification of the Applicant as one of the persons that robbed him.  Mr. Ortiz's letter to this Court is not signed, witnessed, or notarized, which are traditional indicia of reliability, and contains no indication of Mr. Ortiz subjecting himself to the penalty of perjury by his letter.  Additionally, under one of the claims which Applicant has set forth in his Application, it is indicated that co-defendant Chatman made a video statement which did, in fact, implicate the Applicant in this crime.  *See* APPLICATION, Docket #2, Claim 10. Therefore, there exists directly contradicting evidence in this regard.  Thus, even if the Applicant establishes the truth of Mr. Ortiz's letter, this fact does not overcome the other evidence in the

10

record, upon which his conviction was based.

It is the Applicant's burden to provide "new reliable evidence" such that any reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 324. The letter from Mr. Ortiz does not satisfy that standard. Accordingly, Applicant has procedurally defaulted his Claims 1, 2, 3, 5, 6, 7, 9, 10, 12, 13, 14, 15, and 16, and the default cannot be excused. This Court cannot reach the merits of these claims, and they must be dismissed.

## II.   Standard of Review.

With regard to Claims 4, 8, and 11, in the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "When a federal district court reviews a state prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the [applicant] is 'in custody in violation of the Constitution or laws or treaties of the United States.' The court does not review a judgment, but the lawfulness of the [applicant's] custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Accordingly, based on denial of certiorari review by the Colorado Supreme Court in Applicant's case, habeas review in this Court is concerned with the proceedings in the Colorado Court of Appeals which was the final substantive proceedings in the state appellate review process.

The AEDPA applies to all federal habeas applications filed after the AEDPA's effective date

of April 24, 1996, regardless of when the state proceedings occurred. *See Trice v. Ward*, 196 F.3d 1151, 1158 (10th Cir. 1999); *Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999).  Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see, also, Hale v. Gibson*, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*,  544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference. *See Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Darks v. Mullin*, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state

court's decision was unreasonable must be assessed in light of the record [that court] had before it."
*Holland v. Jackson*, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

Even if the state court adjudication was contrary to or involved an unreasonable application
of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the
trial mechanism, which def[ies] analysis by harmless-error standards," *Brecht v. Abrahamson*, 507
U.S. 619, 629 (1993), the harmless error standard of *Brecht* and *O'Neal v. McAninch*, 513 U.S. 432
(1995), must be applied. *See Herrera v. Lemaster*, 301 F.3d 1192, 1200 (10th Cir. 2002). Under
*Brecht*, habeas relief is not proper unless the error had a "substantial and injurious effect or influence
in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *O'Neal* addresses the situation where
a court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where
"the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the
harmlessness of the error." *O'Neal*, 513 U.S. at 435. In such a case, *O'Neal* instructs a court to
treat the error "as if it had a substantial and injurious effect or influence in determining the jury's
verdict." *Id.* (quoting *Brecht*, 507 U.S. at 623).

### A.     Claim 4.

Applicant claims that he was denied his due process rights by the trial court's refusal to
suppress identification evidence. Specifically, Applicant argues that the photographic lineup
presented to witnesses and/or victims was so suggestive as to make their identification based on the
photo unreliable and suggestive.

The Supreme Court has established a two-step inquiry for evaluating the constitutional
permissibility of identification testimony based on out-of-court identification procedures. First, the
court must determine whether the identification procedure was impermissibly suggestive. *See*

*Simmons v. United States*, 390 U.S. 377 (1968).  Suggestive identification procedures are those that "increase the likelihood of misidentification."  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  If a procedure is found to be suggestive, then the court must determine, taking into consideration the totality of the circumstances, whether the identification was nevertheless reliable.  *Id.* at 199.  The Court has delineated five factors to be considered in determining reliability if the identification procedure is found to be suggestive.  *Id.* at 199-200.

> In rejecting the Applicant's claim on direct appeal, the Colorado Court of Appeals found that:

> Defendant does not contend, and there is no basis for concluding, that the [photographic] array itself was unduly suggestive.  Although the victim testified that he "had a feeling" when he went to the station that he would be shown a picture of the person who had robbed him, that there is nothing in the record to suggest that the police did anything to encourage that feeling.  On the contrary, the victim testified at the suppression hearing that the police had told him that the individuals in the array "may or may not have been involve in the incident."

STATE COURT RECORD, Docket #17, Exh. D, pp. 11-12.

The state appellate court's ruling, while not citing to Supreme Court cases, is not contrary to nor an unreasonable application of the Supreme Court's reasoning with regard to the constitutional permissibility of identification testimony based on out-of-court identification procedures, or the two-step inquiry for evaluating such procedures.  Further, the state court ruling does not contradict Supreme Court precedent.

Even if the identification procedure had been suggestive, "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability."  *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977) (footnote omitted).  The victim observed the robber during the commission of the crime, and he identified the photograph of the Applicant out of a lineup of six photographs.  The

14

length of time between the crime and the identification was only a couple of days.  *See* STATE COURT RECORD, Docket #17, Exh. A, pp. 5-6.  Therefore, even if this Court were to accept the Applicant's contention that the procedure was unnecessarily suggestive, the evidence of reliability outweighs any suggestiveness.

Additionally, the decision is not an unreasonable determination of facts in light of the evidence presented to it.  The findings made by the state appellate court are presumptively correct, and Applicant has provided no clear and convincing evidence to rebut those findings.  Accordingly, harmless error analysis is not necessary, and Applicant cannot obtain habeas relief in this Court on this claim.

**B.     Claim 8**.

Applicant claims that his right to the assistance of counsel was violated, because the trial court denied his request to appoint private counsel to represent him in place of the public defender's office. Applicant contends that his trial counsel refused to explain matters to him because he had too many other cases.  Applicant argues that this constituted a material limitation on trial counsel's ability to assist him.  The trial court held a hearing on this matter, inquired into the reasons for Applicant's request, and denied the request.  The trial court stated, "You have got one of the most experienced public defenders representing you.  And while he may not always agree with the way that you think the case ought to be handled, I'm sure he'll do the best job possible for you." RESPONSE, Docket #16, p. 24.

The Colorado Court of Appeals determined that the trial court properly denied Applicant's request.  The Court of Appeals concluded that the trial court's inquiry into the reasons for Applicant's request was adequate, that the reasons did not establish either a complete breakdown in

communication or a conflict of interest, and that Applicant failed to allege any ineffective assistance as a result of this alleged conflict. STATE COURT RECORD, Docket #17, Exh. D, pp. 3-4.

"To prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002). The following factors guide the Court's analysis: "whether (1) the defendant's request was timely; (2) the trial court adequately inquired into defendant's reasons for making the request; (3) the defendant-attorney conflict was so great that it led to a total lack of communications precluding an adequate defense; and (4) the defendant substantially and unreasonably contributed to the communication breakdown." *United States v. Porter*, 405 F.3d 1136, 1140 (10th Cir. 2005).

Here, the trial court did inquire into the reasons for Applicant's request. And Applicant's responses do not establish a complete breakdown of communication, only that Applicant and trial counsel disagreed about how to proceed with the case and that he did not find trial counsel's explanations of the evidence and legal arguments to be sufficient. On this claim, the Colorado Court of Appeals applied the appropriate factors and did not reach an unreasonable conclusion. *See Romero v. Furlong*, 215 F.3d 1107, 1112 (10th Cir. 2000). Accordingly, the Colorado Court of Appeals' holding is not an unreasonable application of Supreme Court precedent, nor an unreasonable determination in light of the facts presented.

## C.    Claim 11.

Applicant claims that his rights to a fair trial and an impartial jury were violated by the trial court's failure to strike potential juror Biderman for cause. Biderman was a former city attorney with extensive knowledge in criminal law. Biderman also believed that he knew the father of a potential

law enforcement witness, which he believed could affect his impartiality.  When Applicant moved to strike for cause, the prosecution stated that it would not call the potential law enforcement witness in this case.  Because the motion to strike for cause was denied, Applicant used a peremptory challenge to remove Biderman from the jury.  Applicant does not argue that any of the jurors who actually served were impartial.

The Colorado Court of Appeals determined that Biderman's relationship with the father of a potential witness who would not be called at trial and his background in criminal law did not render him a biased juror.  STATE COURT RECORD, Docket #17, Exh. D, pp. 5-6.  Notably, Biderman did not serve on the jury; he was only a potential juror.  Accordingly, this claim does not rise to the level of a constitutional question.  Any error in the trial court's refusal to strike Biderman is harmless, because it could not have affected the trial or the actual jury.  *Chavez v. McKinna*, 41 Fed. Appx. 319, 321-322 (10th Cir. 2002) ("In any event, because [the potential juror] was removed by a peremptory challenge and because Petitioner failed to establish that there were any biased jurors actually sitting, his claim must fail.").  As the Supreme Court explained:

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error.  But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury.  We have long recognized that peremptory challenges are not of constitutional dimension.  They are a means to achieve the end of an impartial jury.  So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.  We conclude that no violation of petitioner's right to an impartial jury occurred.

*Ross v. Oklahoma*, 487 U.S. 81, 88 (1988) (citations omitted).  Thus, Applicant is not entitled to relief on this claim.

17

## <u>CONCLUSION</u>

As the discussion above demonstrates, Applicant is not entitled to relief under 28 U.S.C. §

2254.  Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing

is required.   Based upon the foregoing analysis, and the entire record herein, I hereby **recommend**

that District Judge Walker D. Miller **deny** the Application [Docket #2] and that this case be dismissed

with prejudice.

Dated at Denver, Colorado, this 31st day of May, 2007.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge